BLEASE, Acting P. J.,
Concurring.—I concur in the result reached by the majority. I write separately because, while I do not agree with the trial court’s reason for denying discovery, I do not believe formal discovery is appropriate at the pre-entry stage at which it was presented here. Formal discovery is inappropriate at the initial stage of the prelintinary entry proceeding because the issue to be determined at a potential trial is the amount of actual damage to the property and the value of the substantial interference with possession and use of the property as a result of the entry. Obviously, when such damage or interference has not yet occurred, no relevant discovery can be meaningfully conducted. The owners implicitly recognize this point because their argument on remand is limited to the need for discovery prior to trial to determine valuation issues—not for additional information related to the testing.
I acknowledge that the parties are fully entitled to formal discovery in a precondemnation proceeding if the matter goes to trial for damages. However, because of the expedited nature of the proceedings and the trial court’s obligation under the statute as a fact finder prior to entry, as well as the lack of any prejudice in this case, the trial court did not err in denying discovery at the initial stage of this proceeding.
Before discussing the reasons the trial court did not err, it is helpful to look at how the complete precondemnation proceeding works, and at what occurred below.
A precondemnation proceeding can go one of three ways: (1) the condem-nor decides not to use the property for its project and the property owner is satisfied that the preliminary deposit of money is satisfactory compensation for the damage and use of the property; (2) the condemnor decides not to use the property for its project and the property owner, not being satisfied with the preliminary deposit, requests a jury trial on the issue of damage or use of the property; or (3) the condemnor decides to take the property for its project after conducting tests.
Only in the second scenario will the jury trial procedure under the precondemnation statutes be utilized. In the first scenario there is no need for *1024 a jury trial because the owner simply accepts the deposit as satisfactory payment. In the third scenario, the owner’s remedy if damage occurs that is not recoverable as the fair market value of the property, is to file a compulsory cross-complaint within the classic eminent domain action. (Code Civ. Proc., § 426.70.)[1] Any precondemnation damage or loss of use is not recoverable in the main eminent domain action because recovery in eminent domain is limited to the fair market value of the property that is taken, and this amount does not include any preliminary actions of the condemnor relating to the taking of the property.[2] (§ 1263.330, subd. (c).) Consequently, only in the second scenario will any discovery be necessary within the precondemnation proceeding.
Prior to the order granting or denying entry, the only relevant issues for the trial court to determine are (1) whether the entity proposing the tests has the power of eminent domain; (2) the purpose for the entry; (3) whether the nature and scope of the activities proposed are necessary to accomplish that purpose; and (4) the probable amount of compensation that should be paid to the owner of the property for the actual damage to the property and interference with its possession and use. (§§ 1245.010, 1245.030, subd. (b).) It is the trial court’s duty to make the relevant factual determinations.
In this case, the Department of Water Resources (DWR) filed a petition for entry, to which it attached a description of the tests it proposed to conduct. Concurrently, it filed the declarations of eight employees further describing the testing and the justifications for the tests. The owners filed declarations in opposition to the entry. The court held two hearings that were unrelated to the matters at issue here. The owners filed more declarations detailing the potential harm the testing would cause them. The trial court conducted another hearing, at which it heard the concerns of the landowners and took extensive testimony from DWR employees regarding the proposed tests. Not only did the trial court ask questions, but also multiple counsel for the landowners conducted cross-examination of DWR’s witnesses. Each side proposed general conditions to the entry for environmental testing. Another hearing was conducted regarding the entry for environmental testing. At this hearing, the landowners discussed their concerns with the details of the proposed testing. The trial court ordered each side to file posthearing briefs following the hearing. The court held another hearing at which it explained its tentative ruling. The parties then discussed the details of the entry order at *1025 length. Only after these numerous steps did the trial court finalize an entry order for environmental testing.
It is hard to imagine what more information the owners could legitimately seek through formal discovery at this point in the proceeding. In addition to setting forth the probable amount of compensation for each property, the order granting entry to conduct environmental testing set forth the type of testing permitted, the number of personnel allowed on the property, the number of days allowed for the testing, the type of equipment allowed during testing, and in some cases the time of day for testing. Even though the trial court denied the entry for geological testing, a significant amount of detailed information was presented for the court’s evaluation.
Discovery prior to entry is not indicated for several reasons. First, as previously mentioned, the issues to be finally determined by the precondem-nation proceeding—actual damage and the value of loss of possession or use of the property—necessarily do not arise until after the testing is completed. The relevant issues prior to the order granting entry (whether the nature and scope of the activities are reasonably necessary to accomplish the purpose of the entry, and the probable amount of compensation) are forward-looking. They have not yet occurred. The subject of most discovery is backward-looking, i.e., where, when, and how did the incident occur, who saw it, and what were the damages. The kind of simultaneous exchange of information needed prior to the entry order is best conducted in the manner the trial court handled it here. Formal discovery procedures are simply not well suited to the task.
The issues to be determined in a precondemnation trial, and the issues about which discovery is necessarily limited, are the amount of actual damage to the property and the value of the substantial interference with possession and use of the property. (§ 1245.060, subd. (a).) Potentially relevant as well is whether the entry was unlawful, whether the activities on the property “were abusive or lacking in due regard for the interests of the owner,” or whether there was a failure to comply with the entry order or any modification thereof. (§ 1245.060, subd. (b).) None of these issues may be determined before the entry has been completed, nor can there be any discovery of matters relevant to these issues until the completion of the entry.
In their brief to this court after remand, the owners recognize that their discovery rights are related to the issues to be tried, not to the issues prior to entry. They claim, “nothing in the Supreme Court’s decision condones, expressly or impliedly, a rule that would deprive Fandowners of the right to conduct discovery prior to going to trial. The Fandowners will obviously need to conduct expert discovery with respect to valuation issues and *1026 percipient discovery with respect to non-expert issues affecting the value of the taking.” (Italics added.)
The trial court itself is in the best position to determine whether the petition has set forth sufficient facts to allow it to make the necessary determinations, and to require more information if necessary. The property owner may have information relevant to this inquiry, and may suggest that the trial court obtain information from the government that is not in the petition, but I see no purpose to be served by allowing formal discovery at this stage of the proceeding, other than to delay the entry.
Second, the Supreme Court has emphasized the “expedited” nature of the precondemnation proceeding. (Property Reserve, Inc. v. Superior Court (2016) 1 Cal.5th 151, 192, 198 [204 Cal.Rptr.3d 770, 375 P.3d 887]; see also id., at p. 198.) Discovery should be had only after the testing has been completed and before a jury trial is commenced, if one becomes necessary. The trial court recognized the need for a speedy resolution and the potential for unwarranted delay when it told counsel for the owners, “You could just come up with 500 questions that would swamp them forever, and it would produce no useful information. We all know that.” Certainly, the time necessary to allow the parties to depose witnesses, propound interrogatories, inspect documents, request admissions, and exchange expert trial witness information would cause significant delay of the entry, and is inconsistent with a procedure described as “expedited” by the Supreme Court. (Ibid.)
Given the amount of information produced in this case prior to the entry, allowing the parties to conduct formal discovery before the entry would serve no useful purpose and cause unnecessary delay. The most expeditious methods for the court to determine the facts prior to making its determinations regarding the purpose for the entry, the nature and scope of the activities that are reasonably necessary to accomplish such purpose, and the probable amount of compensation to be paid to the owner for actual damage to the property and interference with its possession and use, are the methods the trial court employed here. The government supported its petition with declarations, the owners offered declarations and arguments at the hearings detailing the additional information they needed, and the trial court questioned the parties regarding the particulars of the testing and the landowners’ needs at the hearings.
Third, special proceedings are creatures of statute, and the statutory procedure must be strictly followed. (People v. Quiroz (2016) 244 Cal.App.4th 1371, 1379 [198 Cal.Rptr.3d 923].) The precondemnation statute provides that a precondemnation proceeding is commenced by a petition filed by the government. (§ 1245.030.) It is for the court to determine the purpose for the *1027 entry, the nature and scope of the activities that are reasonably necessary to accomplish such purpose, and the probable amount of compensation to be paid to the owner for actual damage to the property and interference with its possession and use. (§ 1245.030, subd. (b).) The statute does not specify that the parties may conduct discovery on these preliminary issues that are to be determined by the trial court.
For all of these reasons, the trial court’s denial of discovery prior to entry and testing should be affirmed.

 Further undesignated statutory references are to the Code of Civil Procedure.

 For example, where crops are damaged prior to the filing of the complaint in the condemnation action, that loss cannot be recovered in the eminent domain proceeding and must be recovered by way of a compulsory cross-complaint because it presents new matter not directly related to the complaint.